■ CROSS PROPERTIES, INC., Respondent-Appellant, and FARSOWIN LTD. et al., Respondents, v BROOK REALTY CO., INC., Appellant-Respondent, and COUNTY DOLLAR CORPORATION et al., Respondents, et al., Defendants.—In a stockholders' derivative action to enjoin the sale of real property, in which the contract of sale was adjudged valid and enforceable, and in which specific performance of the contract was decreed, (a) defendant Brook Realty Company appeals, as limited by its notice of appeal and brief, from so much of an amended supplemental judgment of the Supreme Court, Westchester County (Burchell, J.), dated June 21, 1983, as (1) granted certain reductions of purchase-money notes and mortgages on the property in the total amount of only $113,596, representing percentage-of-sales rentals earned during 1968 and damages for a negligently granted lease, and denied various other claims for reductions in the purchase-money notes and mortgages based on allegedly improvidently granted leases and for damages for delay in delivering possession of the property, (2) granted an increase in the purchase-money notes and mortgages in the amount of $133,659 for interest on certain leasing expenses, (3) fixed and determined the amount of said purchase-money notes and mortgages, including principal and accrued interest, to be $4,894,159, with additional interest to accrue at the rate of 9% per annum from November 1, 1982, (4) denied its claim for counsel fees as damages sustained by reason of a preliminary injunction, (5) ordered discharged and canceled plaintiffs' $1,000,000 preliminary injunction bond, and (6) denied its motion pursuant to CPLR 2221 for an order clarifying certain provisions of a supplemental judgment of the same court, entered December 15, 1982, relating to its claim for counsel fees, and (b) plaintiff Cross Properties, Inc. cross-appeals, as limited by its notice of appeal and brief, from so much of the same amended supplemental judgment of the same court, as (1) fixed the interest due and owing on the purchase-money notes and mortgages from November 1, 1982, at a rate of only 9% per annum, and (2) denied its cross motion to compel defendant Brook Realty Company to increase the amount of its undertaking on the judgment.

Amended supplemental judgment affirmed, insofar as appealed and cross-appealed from, without costs or disbursements.

Contrary to the position taken by our dissenting colleagues, we find no basis in the record for disturbing Justice Burchell's determinations (1) that the payment of the professional legal fees and real estate commissions in question was proper under the circumstances, and (2) that the payment by plaintiff Cross Properties, Inc. of interest and penalties on the real estate taxes had a rational business basis and did not amount to waste. John E. Tuchler, the expert witness for defendant Brook Realty Co., Inc., testified in effect that it was a prudent business practice to allow interest and penalties to accrue on real estate taxes at a time when it would have been more costly to borrow moneys to make timely payment of taxes, and no evidence was presented indicating that such was not the situation herein. In any event, had the professional legal fees and real estate commissions not been paid, there is no proof in the record that there would have then been sufficient cash on hand to timely pay the real estate taxes in their entirety.

Accordingly, for these reasons, as well as the reasons stated by Justice Burchell, the amended supplemental judgment should be affirmed insofar as appealed and cross-appealed from by the parties. O'Connor, Lawrence and Kunzeman, JJ., concur.

Weinstein, J., concurs in part and dissents in part, with the following memorandum in which Lazer, J. P., concurs. This is the third appeal to this court emanating from protracted litigation surrounding the execution of a contract for the sale of three large parcels of real estate in 1968. More specifically, the instant appeal and cross appeal stem from a stockholders' derivative action commenced in 1968 to enjoin the sale to defendant Brook Realty Co., Inc. (hereinafter Brook Realty) of three parcels of real property and the improvements thereon, which parcels are located in Yonkers, New York; Corpus Christie, Texas; and Orlando, Florida. This appeal and cross appeal concern only the Cross County Shopping Center in Yonkers.

On a prior appeal, the contract of sale was found to be valid and enforceable (see, Cross Props. v Brook Realty Co., 37 AD2d 193, affd 31 NY2d 938, rearg denied 32 NY2d 833), and it was held that the remedy for the sellers' breach of contract was specific performance, with appropriate adjustments to both the buyer Brook Realty and the sellers, to be determined at further hearings (see, Cross Props. v Brook Realty Co., 76 AD2d 445). The instant appeal concerns various claims for adjustments of the purchase price for the period between December 31, 1975, the last date covered by prior hearings

before Justice Burchell, and November 1, 1977, the date of closing of title.

At the trial held before Justice Burchell, Brook Realty alleged, *inter alia,* that a total of $193,945 in interest and penalties was paid by plaintiff Cross Properties, Inc. (hereinafter Cross Properties) to the City of Yonkers during 1976 and the first 10 months of 1977 because the sellers failed to timely pay property taxes. Specifically, it was alleged that because the sellers paid, during the period in question, legal fees of over $500,000 to pursue this lengthy litigation, as well as over $400,000 in real estate brokerage fees, they had insufficient funds with which to pay property taxes. Cross Properties did not deny these facts, but apparently contended that these expenditures constituted proper operating expenses. Consequently, Brook Realty was not entitled to an abatement of the purchase price of the property, based on interest paid due to the late payment of property taxes. Justice Burchell held that the expenditures were proper operating expenditures and denied the claim. In my view, the claim should have been granted. There would have been sufficient cash on hand to timely pay property taxes if there had been no litigation and if the sellers had timely closed and paid the brokerage fees. To require Brook Realty to bear the consequences of the sellers' improper payments of litigation expenses and brokerage fees is grossly unfair. On these facts, Brook Realty is entitled to a further abatement in the purchase price constituting the amount of interest and penalties paid to the City of Yonkers due to the late payment of property taxes by the sellers between December 31, 1975 and November 1, 1977, to wit, a total of $193,945, plus interest, computed as follows: interest should be credited from January 1, 1977, on the amount of $74,916, the amount of interest and penalties paid during 1976, and from November 1, 1977 on the sum of $119,029, the amount of interest paid during the first 10 months of 1977 *(see,* CPLR 5001 [b], [c]). In all other respects, I vote to affirm for the reasons stated by Justice Burchell.

I note, furthermore, that, in my view, Brook Realty failed to prove its claim for $1,533,000 in damages that it alleged it would have earned had it acquired possession of the shopping center on December 31, 1975, due to the superior management capabilities of its principal, Leonard Marx. The proof, which consisted of basically self-serving testimony and a comparative financial statement showing a dramatic increase in income generated by the shopping center after Brook Realty acquired possession on November 1, 1977, is insufficient to prove, by a

preponderance of the evidence, that a similar dramatic increase would have occurred had Brook Realty come into possession of the property on December 31, 1975. Moreover, over $675,000 of the income that Brook Realty allegedly earned after it began operating the center was actually earned prior to November 1, 1977, the date it came into possession of the center.